No. 9777.

E. A. DESLONDE vs. WM. O'HERN.

A judgment for possession of premises leased can be extinguished by agreement. The agreement is a new obligation. The obligation to deliver the premises resulting from the judgment is extinguished by the substitution of an obligation to pay the rent due and remain in the premises to the end of the lease.

When a lessor sues for possession of premises, and a dissolution of the lease. and a judgment is rendered in his favor, the covenant of the lessee to pay rent ceases to exist. Rent is the compensation for the occupancy of the property. The lessor is not entitled to his property and the rent for the same.

When a lessor, after he has obtained a judgment cancelling the lease, voluntarily receives from the tenant all the rent due according to the terms of the lease and waives his right to issue a writ of ejectment, his act in receiving the rent recognizes the lease as still in

Deslonde vs. O'Hern.

force, and in lieu of possession accepts a specific performance of the contract of lease. One may have a legal right, yet waive it by becoming reconciled to his debtor.

When a judgment cancelling the lease is rendered, the parties thereto are placed in the same position they occupied before the lease was signed. By voluntarily accepting all the rent due, and rent in advance, the old lease was either reinstated, or there was a new lease from month to month.

When a writ of ejectment illegally issues without probable cause, malice will be inferred.

When a lessor, in illegally issuing a writ of ejectment was actuated by malice, he is liable to a lessee for damages, as a recomperse for an outrage upon his rights and feelings as a citizen and a man.

A PPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*Fred. D. King* and *W. W. Handlin,* for Plaintiff and Appellee :

A judgment for possession of premises leased can be extinguished by agreement. The agreement is a new obligation The obligation to deliver the premises resulting from the judgment is extinguished by the substitution of an obligation to pay the rent due, and remain in the premises to the end of the lease. C. C. 2181, 2190, 2186.

When a lessor sues for possession of premises, and a dissolution of the lease, and a judgment is rendered in his favor, the covenant of the lessee to pay rent ceases to exist. Rent is the compensation for the occupancy of the property. The lessor is not entitled to his property and the rent for the same. Sigur vs. Loyd, 1 A. R., p. 422 ; 6 A. R., p. 2 ; C. C. 2729, 2700, 2045, 2040, 2046, 2041.

When a lessor, after he has obtained a judgment cancelling the lease, voluntarily received from the tenant all the rent due according to the terms of the lease, waives his right to issue a writ of ejectment, and execute the judgment for possession, his act in receiving the rent recognizes the lease as still in force, and in lieu of possession accepts a specific performance of the contract of lease. One may have a legal right, yet waive it by becoming reconciled to his debtor. Chevallier vs. Borie, 3 L. R., p. 300.

When a judgment cancelling the lease is rendered the parties thereto are placed in the same position they occupied before the lease was signed. By voluntarily accepting all the rent due, and rent in advance, the old lease was either reinstated, or there was a new lease from month to month. In either event, the lessee could not be ejected until there was a new breach of the contract, notice to vacate and another suit. 1 A. R., p. 422.

Where a writ of ejectment illegally issues without probable cause, malice will be inferred. 37 A. R., 881 ; 33 A. R., 292.

When a lessor, in illegally issuing a writ of ejectment, was actuated by malice, he is liable to a lessee for exemplary damages, as a recompense for a gross outrage upon his rights and feelings as a citizen and a man, as an example to deter others from similar conduct in the future, and for the purpose of punishing the lessor for his bad motives and intentions. 37 A. R., 874 ; 34 A. R., 1158 ; 7 A. R., 448 ; 12 R R., 680 ; 13 L. R., 274.

A verdict of a jury on a question of fact should have great weight with the court, unless the evidence clearly shows they were manifestly in error. 22 A. R., p. 31 ; 20 A. R., 455 ; 6 L. R., 455.

*F. Michinard,* for Defendant and Appellant .

The opinion of the Court was delivered by

Todd, J. This is a suit for damages growing out of the acts of the

defendant described in the petition, and which will be set forth here-
after.  The amount claimed is $2500.  There was judgment in favor
of the plaintiff for $100; the defendant has appealed and the plaintiff
prays to amend the judgment by increasing the same to the amount
demanded—$2500.

The facts relating to the controversy and which we think are borne
out by the evidence, are briefly these:

On the 1st of October, 1884, the defendant leased to the plaintiff a
dwelling-house situated in this city, for twelve months, at a rental of
forty dollars per month, aggregating for the entire year $480.  Of this
sum he paid $320 in advance, before the contract of lease was signed,
and for the balance he executed his eight promissory notes for twenty
dollars each, the first payable on the 1st of December, 1884, and the
remaining ones respectively on the first of each month following.

There were clauses in the contract to the effect, that if these rent
notes were not promptly paid at maturity, the lease was to be null and
the money paid on account of it to be forfeited, and that on failure to
pay one of the notes, the whole of them were to be demandable.

Deslonde paid the note falling due in December, but failed to meet
those maturing in the three months following.

On the 15th of March, 1885, O'Hern, the lessor, brought suit to have
the lease dissolved and to evict Deslonde, the lessee, from the prem-
ises, and obtained judgment to that effect on the 23d of April follow-
ing.

During the pendency of this suit, 9th of April, he brought suit on
two of the notes due January and February, accompanied by a writ of
provisional seizure, under which the furniture of Deslonde was seized
and a keeper placed in charge of the premises.

Soon after the judgment of eviction was rendered, Deslonde, through
his attorney, proposed to O'Hern—the latter's attorney also being
present—that he would pay all the costs and all of the notes if he were
permitted to remain on the leased premises till the expiration of the
lease.  This was agreed to by O'Hern, and Deslonde then paid him the
two notes sued on, agreed to pay the costs to the sheriff, and appointed
the next day to settle the rest of the notes outstanding.  The parties
met according to appointment and Deslonde paid the March, April
and May notes, and at the same time offered to pay the remaining two
notes for June and July, but O'Hern stated (quoting his own language)
"that he could not get them at present, and that anyhow they were
not due."  After this payment was made O'Hern demanded that Des-
londe pay also his attorney's fee.  The latter replied he "would do so

provided it was part of the compromise." He consulted his attorney immediately with respect to this last demand, and was informed by him that the attorney's fee was no part of the costs, and that he was in no way liable for it under the agreement or compromise.

For some days after this conversation between plaintiff and defendant, the plaintiff, it appears, was confined to his house by an attack of rheumatic gout, and on the 8th of May, the first day he was able to get out, he called at the sheriff's office for the purpose of paying the costs that he had consented to pay under his agreemunt with O'Hern referred to. He found that the sheriff had in his hands a writ of $fi. fa.$ for these costs, and also a writ of ejectment issued under the judgment, evicting him from the leased premises. The costs which he had agreed to pay, amounting at the time to $12.50, had been augmented by the costs of issuing the writs of $fi. fa.$ and ejectment to $19—but, he neverthe paid the bill. His remonstrances, and those of his counsel against the execution of the writ of ejectment proving ineffectual, Deslonde was compelled to resort to an injunction to restrain its execution. This injunction accompanied the action for damages before referred to, and is the case now before us on appeal.

It was tried in the lower court before a jury, who returned a verdict in favor of the plaintiff Deslonde for $850. A new trial was granted and it was again tried, this time before the judge, and judgment rendered for $100 damages against the defendant. It has been stated above that when Deslonde paid the rent notes of March, April and May, on the 2d of May, he at the same time offered to pay likewise the June and July notes, (which included all the notes), but was told by O'Hern that he did not have them with him, and they were not then due.

On the 5th of June Deslonde wrote to O'Hern, offering to pay the note for that month at any time and place he (O'Hern) would designate, but received no answer, and the note was not presented.

In the next month (July) he deposited with a notary the amount of the two notes (June and July), and requested him to make a tender of the same to O'Hern.

The notary went to the residence of O'Hern, but finding him absent, tendered the money to his son or grandson, whom he found in the house, and who told the officer, in answer to an inquiry, that he represented O'Hern in his absence, but he declined to receive the money.

These are all the facts bearing on this controversy. There is a conflict of testimony in regard to some of them, but the above statement

represents our conclusions in relation to them, after a thorough examination of the evidence.

To summarize : It is shown that O'Hern leased to Deslonde a dwelling-house for one year for $480, or $40 per month. That he was paid in advance $320—equivalent to eight months' rent; that in the month of December following date of contract (October 1), he was paid $20 more; that notwithstanding these payments he was sued for installments of the rent, and had the furniture of the lessee seized under a writ of provisional seizure; that he also sued to have the tenant evicted, and obtained judgment against him ordering his eviction; that he agreed not to execute this judgment and to permit the lessee to remain on the premises if he (Deslonde) would pay costs and the entire rent; that the lessee did pay all costs and also the entire rent except $40 thereof, and offered to pay this, and would have done so but that the lessor declined to produce the rent notes and refused to accept subsequent offers of payment; that in violation of his agreement, and in spite of the willingness manifested by the lessee to comply with that agreement to the very letter, and in utter disregard of Deslonde's rights, O'Hern persisted in the execution of his writ of ejectment, and in his determination to evict the lessee from his premises, until Deslonde compelled him to desist therefrom by a writ of injunction.

In all these proceedings the conduct of O'Hern was harsh and without the slightest justification. It can only be explained on the hypothesis that he was determined to wrest the property leased from the lessee (Deslonde) and at the same time force him to pay the rent.

If O'Hern stood upon his judgment of eviction, then that judgment dissolved the lease, and debarred him from claiming rents falling due after that time; but whilst O'Hern was thus engaged in harassing Deslonde with his writs—which was in May, and the lease did not expire till October—the entire rental of the year had been paid except for a single month.

There was such an entire lack of justifiable cause for O'Hern's acts and proceedings against Deslonde that the law would impute them to being prompted by malice. 33 Ann. 292; 37 Ann. 881.

It seems that the jury in the court below and the judge likewise reached the conclusion we have announced touching the conduct and acts of the defendant and as being of a character to render him liable for damages, but the judge, by his decree, evidently limited the damages to the actual pecuniary loss or expense sustained by the plaintiff from the acts and proceedings complained of. He made no allowance for the trouble, mortification, mental anxiety and distress caused

thereby to the plaintiff, which this Court in the case of Byrne & Co. vs. Gardner, 33 Ann. 6, held to be actual damages, although of that nature that could not be precisely measured or determined by money or a money value, and that they were of that kind of damage, the estimate of which is left largely to the discretion of the judge or jury, under art. 1934 of the Civil Code.

We think the judge erred in thus restricting the liability of the defendant. To a man of average sensibility, under the circumstances attending this case, the expense or pecuniary outlay to which he was subjected by the acts complained of, would doubtless seem of little significance when weighed with the inconvenience, mental suffering and humiliation experienced by the plaintiff from the causes stated, aggravated as they must have been, by the serious domestic trouble which, according to the evidence, was weighing upon him at the time.

These considerations induce us to grant the prayer for the amendment of the judgment, and to increase the same by the additional sum of $250 to that awarded by said judgment, making the entire amount $350.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended by increasing the sum therein adjudged by the further sum of $250, making the total of this decree $350; and as thus amended, the same be affirmed at the cost of appellant in both courts.